**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-01679-RMR-STV

MARITZA RODRIGUEZ, et al.,
on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

PROFESSIONAL FINANCE COMPANY, INC.,

    Defendant.

___

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT**
___

Under Fed. R. Civ. P. 23(e), Plaintiffs Maritza Rodriguez, Jerry Blake, Natalie Willingham, Christopher Schroeder, Ryan McGarrigle, and Marko Skrabo ("Plaintiffs") submit this Unopposed Motion for Preliminary Approval of Class Action Settlement.

## I.  INTRODUCTION

This litigation arises from a data security incident experienced by PFC on February 26, 2022 (the "Data Security Incident") that involved the unauthorized access of files containing the personal identifying information (PII) and protected health information (PHI) of approximately 2,000,000 individuals. Declaration of Terence R. Coates in Support of Pls.' Unopp. Mot. for Prelim. Approval ("Coates Decl.") filed herewith as **Exhibit 1**, ¶¶ 21, 22.

After extensive arms' length negotiations, the Parties have reached a settlement that is fair, adequate, and reasonable. The agreement creates a $2,500,000 non-reversionary Settlement Fund providing a claims process for all Class members to receive identity theft monitoring and for Class Members whose Social Security Numbers were compromised in the Data Security Incident ("SSN Subclass Members") to claim up to $500 as compensation for unreimbursed out-of-pocket expenses.[1] Additionally, a subclass of SSN Subclass Members who were California residents on the date that the Data Security Incident occurred may claim an additional $50 cash award.

Pursuant to Rule 23(e), Plaintiffs move for an order certifying the class for settlement purposes, preliminarily approving the proposed settlement agreement, and approving the content and manner of the proposed notice process. Plaintiffs respectfully request that the Court preliminarily approve the Settlement Agreement as fair, reasonable, and adequate; preliminarily certify the proposed Class; approve the proposed plan for disseminating the notices as the best notice practicable; appoint Plaintiffs as Class Representatives and Terence R. Coates, Joseph M.

---

[1] The Settlement Agreement ("SA") in its entirety is attached as **Exhibit 2**. Capitalized terms shall have the same meaning as assigned to them in the Settlement Agreement.

1

Lyon, and Jean S. Martin as Class Counsel; and, schedule a date for a final approval hearing.

## II. CASE SUMMARY

### A. The Data Security Incident

Defendant is a consumer accounts receivables management company serving clients primarily in the healthcare, retail, finance, and governmental services industries. Consolidated Amended Complaint ("CAC"), ECF 25, ¶ 30. Plaintiffs allege the Data Security Incident put them and other Class Members at risk of imminent, immediate, and continuing risk of harm from fraud and identity theft. *Id.* ¶¶ 140, 155, 168, 179, 192. Defendant denies any wrongdoing or liability.

### B. Procedural Posture

Following an investigation by Plaintiffs' Counsel, Plaintiffs, filed the Consolidated Complaint asserted causes of action for various common law and statutory claims and requested injunctive and equitable relief, an award of compensatory, statutory, nominal and punitive damages, reasonable fees and costs allowable by law, and any such further relief that the Court deems proper. ECF 28. Soon after, the Parties began discussing the prospect for early resolution. Coates Decl. ¶ 13. PFC provided materials regarding its financial position and its wasting insurance policy. *Id*. The Parties exchanged information necessary to evaluate the strengths and weaknesses of Plaintiffs' claims and PFC's defenses. *Id*. Plaintiffs received and analyzed many financials documents from PFC in contemplating a settlement including PFC's profit and loss statements, cash balance sheets, several years of tax returns, operating account snapshots for different months, officer pay, shareholder distributions, and available insurance. *Id*. Obtaining this information was critical for Plaintiffs to evaluate the potential upside of continued litigation compared against the potential for resolution. *Id*. After exchanging settlement demands and counters over the course of many months, the Parties ultimately negotiated a settlement in

2

principle, thereafter diligently drafting, negotiating, and finalizing the Settlement Agreement. *Id*. ¶ 15.

### III. SUMMARY OF SETTLEMENT

Pursuant to the terms agreed to and set out below, the Settlement Agreement resolves all actions, proceedings, and claims against PFC and the Released Parties arising out of the operative facts asserted in the Litigation or in any way related to the Data Security Incident.

#### A. Settlement Benefits

The settlement negotiated on behalf of the Class provides for a $2,500,000 non-reversionary Settlement Fund and a claims process through which Class Members can easily submit for settlement benefits. The settlement provides for relief for the Class defined as follows: "All persons whose personally identifiable information was identified as included in the Data Security Incident and to whom notice of the Data Security Incident was sent." SA ¶ 50. The Class is comprised of approximately 2,000,000 individuals, with roughly 1,300,000 being SSN Subclass Members and roughly 700,000 being Non-SSN Subclass Members. Excluded from the Class are PFC and its affiliates, successors, heirs, and assigns of PFC. Also excluded from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff. *Id.* ¶ 51. The benefits that can be claimed include reimbursement for out-of-pocket losses; identity-theft protection; and the implementation of security enhancements.

##### a. Out-of-Pocket Loss Reimbursement

Each SSN Subclass Member who files a valid claim with supporting documentation will be eligible for compensation for unreimbursed losses, up to a total of $500. SA ¶ 55(b)(1). SSN Subclass Members may make a Settlement Claim for the following types of losses:

> [U]nreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs

3

associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after the Data Security Incident through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges.

*Id.* ¶ 55(b)(1)(i).

SSN Subclass Members who were California residents when the Data Security Incident occurred may submit a claim to receive $50 as compensation for their statutory claim(s) under California law. *Id*. ¶ 55(b)(2).

### b. Identity-Theft Protection

Every SSN Subclass Member who submits a valid claim is eligible to receive 24 months of free credit and identity monitoring services, called Identity Defense Complete ("Credit Monitoring"). SA ¶ 55(b)(3). Every non-SSN Subclass Member who submits a valid claim is eligible to receive 24 months of free identity monitoring services, called Identity Defense Plus ("Identity Monitoring"). *Id.* ¶ 55(c)(1). Class Members can elect to enroll in these services through submission of a Claim Form. Coates Decl. ¶¶ 21, 22. Class Members are not required to submit documentation to redeem identity-theft protection benefits.

### c. Security Enhancements.

As part of the settlement and pre-mediation discovery, PFC disclosed that it has made significant investments in continuing to improve its data security. The settlement contemplates that PFC will pay for the security enhancements separate and apart from the Settlement Fund.

### B. The Notice and Claims Process

The Parties have agreed to use Kroll Administration Services LLC as the Settlement Administrator in this case. *Id.* ¶ 37; see also Coates Decl. ¶ 25. The cost of notice and claims administration is estimated to be approximately $446,465.00. Coates Decl. ¶ 27.

4

### *1. Notice*

The current agreed-upon notice plan calls for direct and individual Notice in the form of text message, email and/or paper notices. SA ¶ 70(a). The Settlement Administrator will be responsible for obtaining the name and phone number and/or email or mailing address of Class Members from PFC (to the extent such information is readily available to PFC from a cost, resource, and access perspective) and performing a skip trace to enable sending notice via U.S. mail when summary post card notice is returned as undeliverable. *Id.* ¶ 68(a)-(c), 69(d). The Settlement Administrator will also establish a dedicated settlement website throughout the claim period, with the forms of Short Notice, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement, contact information for Class Counsel, PFC's Counsel and the Administrator. *Id.* ¶ 44, p. 26 ("Settlement Timeline Primary Dates"). The details of the Notice Program are set out more fully in the Settlement Agreement, ¶¶ 67-70.

### *2. Claims*

The timing of the claims process is structured to ensure that all Class Members have adequate time to review the terms of the Settlement Agreement, make a claim, or decide to opt-out or object. *Id.* ¶¶ 58, 71-74. Class Members will have 90 days from the Notice Deadline to submit their Claim Form to the Settlement Administrator, either electronically or by mail. *Id.* ¶ 58.

To submit a claim for compensation for losses, SSN Subclass Members must submit a Claim Form and supporting documentation (for monetary benefits) and must attest to the best of their knowledge or belief that they are Class Members. SA ¶ 55(b)(1). California Subclass Members must merely submit an attestation of California residence to receive the California Payment. *Id.* ¶ 55(b)(2). Credit Monitoring or Identity Monitoring Services may be claimed by

submitting a valid claim form. *Id.* ¶ 58(b). The Settlement Administrator is given the authority to assess the validity of claims. *Id.* ¶ 58(h).

### 3. Requests for Exclusion and Objections

Any Class Member who wishes to exclude themselves from or object to the Settlement shall have until 90 days after the date of the entry of the Preliminary Approval Order to do so. SA ¶¶ 71, 73(a). Each Class Member wishing to exclude him/herself from the Class must individually sign and timely mail a written request for exclusion to the address designated by the Settlement Administrator. *Id.* A request for exclusion must be postmarked by the Objection/Exclusion Deadline. *Id.* ¶ 74(a). Any Class Member who opts out shall be excluded from the Class, not obtain any benefit under the Settlement Agreement, and not release any claims against the Released Parties. Each Class Member must opt out individually. *Id.* ¶ 72(c). All notices of an intent to object to the Class Settlement Agreement must be written and include the following: (1) his/her/their full name, address, and current telephone number; (2) the name and number of this case; (3) all grounds for the objection, with factual and legal support for the stated objection, including any supporting materials;; and (4) the objector's signature. *Id.* ¶ 74(b).

### C. Plaintiffs' Service Awards, Attorneys' Fees and Expenses

The Settlement Agreement calls for a reasonable service award to each Representative Plaintiff in the amount of $3,500, subject to Court approval, to be paid solely from the Settlement Fund and subject to Court approval. *Id.* ¶¶ 41, 85. The service award is meant to compensate Class Representatives for their efforts, which include maintaining contact with counsel, reviewing and approving pleadings, assisting in the investigation of the case, remaining available for consultation throughout mediation, reviewing the Settlement documents, and for answering counsel's many questions. *Id.*

6

Class Counsel may file a motion seeking reasonable attorneys' fees in an amount not to exceed 30 percent (or $750,000) of the Settlement Fund. *Id.* ¶ 82. In addition, Class Counsel may seek their reasonable costs and expenses from the Settlement Fund (not to exceed $25,000). The entirety of the Fee and Expense Award shall be payable solely from the Settlement Fund. Class Counsel will submit a separate motion seeking attorneys' fees, costs, and Plaintiffs' Service Awards prior to Class Members' deadline to exclude themselves from or object to the Settlement Agreement. *Id.* ¶¶ 83-85.

## IV. LEGAL AUTHORITY

Federal Rule of Civil Procedure 23(e) requires that any compromise of claims brought on a class basis be subject to judicial review and approval. *See also Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002) (approval of a proposed settlement is within the sound discretion of the Court). The settlement of complex class action litigation is favored by public policy and strongly encouraged by the courts.

Approval of a class action settlement takes place in two stages. In the first stage, the court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and directs notice to be given to the class. *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 659 (D. Colo. 2018). "The purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a [final] fairness hearing." *Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 666 (D. Colo. 2015) (internal quotation omitted). In the second stage, the court holds a fairness hearing at which it will address the fairness, reasonableness, or adequacy of the settlement terms and grant final approval of the settlement. Fed. R. Civ. P. 23(e)(2); *Rutter*, 314 F.3d at 1188.

"The settlement of a class action may be approved where the Court finds that the settlement

7

is fair, reasonable, and adequate." *Tuten v. United Airlines, Inc*., 41 F. Supp. 3d 1003, 1007 (D. Colo. May 19, 2014) (citing *Rutter*, 314 F.3d at 1186). "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *In re Pool Prods. Distrib. Market Antitrust Litig.*, 310 F.R.D. at 314-315.

"The purpose at the preliminary approval stage is not to make a final determination of the proposed settlement's fairness." *Nakkhumpun v. Taylor*, 2015 WL 6689399, at *3 (D. Colo. Nov. 3, 2015). Thus, "the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval stage." *Id.* Class Representatives here seek preliminary approval of the proposed settlement—an initial evaluation of the fairness of the proposed Settlement. *See Manual for Complex Litigation* § 30.44 (4th ed.). "Colorado public and judicial policies favor voluntary agreements to settle legal disputes." *See Colorado Ins. Guar. Ass'n v. Harris*, 827 P.2d 1139, 1142 (Colo.1992) (*en banc*).

There is a strong presumption in favor of finding Settlement Agreements fair, adequate and reasonable – especially when the settlement of a class action results from arm's length negotiations between experienced counsel after significant discovery has occurred. *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006); *see, e.g. Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 116 (2d. Cir. 2005), *cert. denied sub nom.*, *Leonardo's Pizza by the Slice, Inc. v. Wal-Mart Stores, Inc.*, 544 U.S. 1044 (2005) (a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (quoting *Manual for Complex Litigation*, *Third* § 30.42 (1995)).

8

"The Court will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious-deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Rhodes*, 308 F.R.D. at 666 (internal citation omitted). Because the proposed Settlement Agreement falls within the range of possible approval, this Court should grant Plaintiffs' motion and allow notice to be provided to the class. *See* 2 Newberg & Conte, Newberg on Class Actions ("*Newberg*") § 11.25 (3d ed. 1992).

## VI. LEGAL DISCUSSION

### A. The Court Should Certify the Proposed Class for Settlement Purposes.

Plaintiffs here seek certification of a Nationwide Class consisting of: "All persons whose personally identifiable information was identified as included in the Data Breach and to whom notice of the Data Breach was sent." Plaintiffs also seek certification of two subclasses: the SSN Subclass and the Non-SSN Subclass. The SSN Subclass consists of, "All individuals who fall within the definition of the "Class" whose Social Security Numbers were potentially accessed or implicated in the Data Breach." The Non-SSN Subclass is made up of, "All individuals who fall within the definition of the "Class" whose Social Security Numbers were not potentially accessed or implicated in the Data Breach."

Under Rule 23, a class action may be maintained where the movants demonstrate (1) the class is so numerous that joinder is impracticable; (2) the class has common questions of law or fact; (3) the representatives' claims are typical of the class claims; and (4) the representatives will fairly and adequately protect class interests. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), *citing* Rule 23(a). Additionally, under Rule 23(b)(3), a class may be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual

9

members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Because a court evaluating certification of a class action that has settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class actions, including data breach cases—are regularly certified for settlement on a *national* basis, including the record-breaking settlement in *In re Equifax. See In re Equifax, Inc. Customer Data Security Breach Litigation*, No. 1:17-md-2800-TWT (N.D. Ga. 2019); s*ee also In re Brinker Data Incident Litig*., No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508, at *14 (M.D. Fla. Apr. 14, 2021). This case is no different.

*1.    The Settlement Class is so numerous that joinder is impracticable.*

Numerosity requires that "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). Here, the Class (and Subclasses) clearly surpass the threshold required to establish numerosity, as the proposed Class includes approximately 2,000,000 individuals who had PII or PHI potentially compromised by the Data Security Incident.

*2.    Questions of law and fact are common to the Settlement Class.*

Commonality requires that Plaintiffs demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The requirement is satisfied where the plaintiff asserts claims that "depend upon a common contention." *Wal-Mart*, 564 U.S. at 347. Commonality can be satisfied by an "instance of the defendant's injurious conduct, even when the resulting injurious effects— the damages—are diverse*." Soseeah v. Sentry Insurance*, 2016 WL 7435792 (D.N.M. 2016) (internal citation omitted). Here, common issues exist between Plaintiffs and Class Members, including (but not limited to): (1) whether PFC failed to implement and maintain reasonable

10

security procedures and practices appropriate to the nature and scope of information compromised in the Data Security Incident; (2) whether PFC's data security systems prior to and during the Data Security Incident complied with applicable data security laws and regulations; and (3) whether PFC's conduct rose to the level of negligence. These common questions are central to the litigation, will generate common answers, and can be addressed on a class-wide basis.

### 3. *Plaintiffs' claims and defenses are typical of the Settlement Class.*

Under Rule 23(a)(3), the typicality requirement is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." Here, Plaintiffs' and Class Members' claims all stem from the same attack on PFC's computers and servers and the cybersecurity protocols that PFC had (or did not have) in place to protect Plaintiffs' and Class Members' data. Thus, the typicality requirement is satisfied.

### 4. *Plaintiffs and their counsel will provide fair and adequate representation for the Settlement Class.*

"The adequate representation requirement of Rule 23(a)(4) concerns both the competence of the class representative's counsel and the representative's willingness and ability to control the litigation and to protect the interests of the class as a whole." *Pliego*, 313 F.R.D. at 126 (internal citation omitted). Plaintiffs' interests are aligned with those of the Class because they seek relief for injuries arising out of the same Data Security Incident and in the same manner. The Settlement Agreement provides for identical relief for all SSN Subclass Members and all Non-SSN Subclass Members. SA ¶ 55(b)(1); 55(b)(3); ¶ 55(c)(1). Moreover, the Settlement was reached following vigorous pursuit by experienced Counsel after arm's length negotiations. Proposed Class Counsel are more than adequate for the purposes of certification herein. *See* Coates Decl. ¶¶ 4, 5, 34. Thus, the requirements of Rule 23(a) are satisfied.

### 5. *Certification is also appropriate because common issues predominate over individualized ones, and class treatment is superior.*

11

Rule 23(b)(3) finds class certification proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for failure and efficiently adjudicating the controversy." This inquiry is two-fold. First, "[i]n order to 'predominate,' the Court must find that questions of law or fact common to class members predominate over any questions affecting only individual members. *Pliego*, 313 F.R.D. at 126 (citing Fed. R. Civ. P. 23(b)(3). In this case, key predominating questions are whether PFC had a duty to exercise reasonable care in safeguarding, securing, and protecting the personal information of Plaintiffs and the Class, and whether PFC breached that duty. These common questions predominate over any individualized issues.

Second, the resolution of tens of thousands of claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating tens of thousands of individual data breach cases arising out of the *same* data breach. Accordingly, the requirements of Rule 23(b)(3) are met and the Class should be certified for settlement purposes.

**B.    The Settlement Terms are Fair, Adequate, and Reasonable.**

On preliminary approval, and prior to approving that notice be sent to the proposed Class, the Court must determine that it will "likely" be able to grant final approval of the Settlement under Rule 23(e)(2). In order to give a settlement final approval, the court must consider whether the proposed settlement is "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D).

Approval of a class action settlement is committed to the sound discretion of the Court. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). The *Jones* factors to evaluate whether a class action settlement is fair and reasonable under F.R.C.P. Rule 23 include: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and, (4) the judgment of the parties and their counsel that the settlement is fair and reasonable. *Id.* Here, because the Settlement Agreement is fair, reasonable, and adequate under both the Rule 23 criteria and the Tenth Circuit *Jones* factors, this Court should grant preliminary approval and allow notice to issue to the Class.

### 1. *Whether the settlement was fairly and honestly negotiated*

The negotiations in this matter occurred at arm's length. SA ¶ 110. Settlements negotiated by experienced counsel that result from arm's length negotiations are presumed to be fair, adequate, and reasonable. *Lucas*, 234 F.R.D. at 693.

### 2. *Whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt*

The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain. Data breach litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc*., No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."). While Plaintiffs strongly believe in the merits of their case, they also understand that PFC asserts potentially case-dispositive defenses. Class certification is another hurdle that would have to be met—and one that been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig*., 293 F.R.D. 21 (D. Me. 2013).

*3. Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation*

The Settlement guarantees Class Members real relief and value for harms as well as protections from potential future fall-out from the Data Security Incident. The $2,500,000 Settlement Fund compares quite favorably to terms approved by courts in other, similar data breach cases. *See, e.g., Dickey's Barbeque Restaurants, Inc.*, No. 20-cv-3424, Dkt. 62 (N.D. Tex.) (data breach class action involving more than 3 million people that settled for $2.3 million).

*4. The judgment of the Parties and their Counsel that the settlement is fair and reasonable*

The judgment of the Parties and their Counsel also supports a finding that the settlement is fair and reasonable. In negotiating the Settlement, Plaintiffs' Counsel relied upon published reports documenting data breach and identity theft costs, actual costs incurred by Class Members (as relayed in conversations with Plaintiffs' Counsel), their own experience, and reported settlements in other data breach class actions. The monetary benefits offered to Class Members are more than fair and reasonable in light of reported average out-of-pocket expenses due to a data breach, and compare favorably to what Class Members could recover if successful at trial. The proposed Settlement does not provide any preferential treatment to the named Plaintiffs or any segments of the Class. See Fed. R. Civ. P. 23(e)(2)(D). The reimbursement for out-of-pocket expenses allows Class Members to obtain relief based upon the specific types of damages they incurred and treats every claimant in those categories equally relative to each other. Plaintiffs intend to apply for service awards for the Class Representatives. These awards "are fairly typical in class action cases" and are intended to compensate class representatives for participation in the litigation. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Class Representatives were not promised a service award, nor did they condition their representation on the expectation of a service award. Coates Decl. ¶ 32.

14

### C. The Proposed Settlement Administrator Will Provide Adequate Notice.

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed Settlement. Under Rule 23(b)(3), parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The Notice provided for by the Settlement Agreement is designed to meet all the criteria set forth by Rule 23. *See* SA Exs. B and D (Long and Short Form Notices). Here, the Settlement provides for direct and individual notice to each Class Member. SA ¶ 70(a). Not only will Class Members receive individualized notice via text message, email and/or direct mail, but all versions of the settlement notice will be available to Class Members on the Settlement Website, along with all relevant filings. *Id.* ¶ 44. The proposed notice plan satisfies due process. *See* Declaration of Scott M. Fenwick of Kroll Settlement Administration, LLC in Connection with Preliminary Approval of Class Action Settlement, ¶ 20 (attached as **Exhibit 3**). Accordingly, the Notice process should be approved.

### V. CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable settlement that provides Class Members significant relief and is well within the range of reasonable results, and an initial assessment of factors required to be considered on final approval favors approval. For these and the above reasons, Plaintiffs respectfully request this Court certify the Class for settlement purposes and grant their Motion for Preliminary Approval of Class Action Settlement. A Proposed Order Granting Preliminary Approval of Class Action Settlement is attached as **Exhibit 4**.

Dated: May 17, 2024                              Respectfully submitted,

*/s/ Terence R. Coates*
Terence R. Coates
Dylan J. Gould
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*tcoates@msdlegal.com*
*dgould@msdlegal.com*

Joseph M. Lyon
**THE LYON LAW FIRM, LLC**
2754 Erie Avenue
Cincinnati, OH 45208
Phone: (513) 381-2333
Fax: (513) 766-9011
*jlyon@thelyonfirm.com*

JEAN S. MARTIN
FRANCESCA KESTER
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 223-5505
jeanmartin@ForThePeople.com
fkester@ForThePeople.com

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of May, 2024, I caused the foregoing document to be filed with the Clerk of this Court via the Court's CM/ECF system, which will cause a true and correct copy to be served electronically on all counsel of record.

*/s/ Terence R. Coates*
Terence R. Coates