# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01679-RMR-STV

MARITZA RODRIGUEZ, et al.,
on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

PROFESSIONAL FINANCE COMPANY, INC.,

    Defendant.

---

# PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL
# OF THE CLASS ACTION SETTLEMENT

---

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................................1

II. INCORPORATION BY REFERENCE ..................................................................................2

III. SUMMARY OF SETTLEMENT ............................................................................................3

    A. Settlement Benefits ........................................................................................................3

        1. Out-of-Pocket Loss Reimbursement .......................................................................3

        2. Identity-Theft Protection .........................................................................................4

        3. Security Enhancements ...........................................................................................4

    B. The Notice and Claims Process .....................................................................................4

        1. CAFA Notice ...........................................................................................................4

        2. Notice to Class ........................................................................................................5

        3. Claims, Objections, and Requests for Exclusion ...................................................6

    C. Attorneys' Fees, Costs, and Service Awards ................................................................6

IV. LEGAL ARGUMENT ..............................................................................................................7

    A. Final Certification of the Settlement Class is Appropriate ...........................................7

    B. Adequate Notice was Provided ......................................................................................7

    C. Plaintiffs' Counsel Should Be Appointed as Settlement Class Counsel ................10

    D. The Settlement Should be Finally Recognized as Fair, Reasonable, and Adequate .......................................................................................................................10

        1. The Settlement was Fairly and Honesty Negotiated .............................................11

        2. Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt ...........................................................................................12

        3. The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation .....................................13

Case No. 1:22-cv-01679-RMR-STV   Document 64   filed 04/03/25   USDC Colorado
pg 3 of 20

        4.        The Judgment of the Parties and their Counsel that the Settlement is Fair and Reasonable ....................................................................................... 14

        5.        There are No Additional Agreements Required to be Identified Under Rule 23(e)(3) ..................................................................................... 15

        6.        The Reaction of the Settlement Class Members is Positive, and There is No Opposition to This Settlement ................................................ 15

V.        CONCLUSION ............................................................................................................ 15

CERTIFICATE OF SERVICE ................................................................................................ 17

Plaintiffs Maritza Rodriguez, Jerry Blake, Natalie Willingham, Christopher Schroeder, Ryan McGarrigle, and Marko Skrabo ("Plaintiffs"), individually and on behalf of the Settlement Class they represent, hereby move this Court to grant final approval of this class action settlement.

I. **INTRODUCTION**

This litigation arises from a data incident experienced by Defendant Professional Finance Company, Inc. ("Defendant" or "PFC") on February 26, 2022 (the "Data Incident") that involved the unauthorized access of files containing the personal identifying information (PII) of approximately 2,000,000 individuals.

After extensive arms' length negotiations, the Parties have reached a settlement that is fair, adequate, and reasonable. On May 17, 2024, Plaintiffs moved for preliminary approval of the proposed class action settlement and for certification of the Settlement Class in the above captioned action. ECF 55, "Prelim. Approval Mot.". The Court granted preliminary approval on October 15, 2024, finding that the terms of the settlement were "fair, reasonable, and adequate," and that the Class should be given notice. ECF 59, "Prelim. Approval Order".

Plaintiffs now seek final approval of the settlement and certification of the Settlement Class. Following preliminary approval, the Settlement Administrator, Kroll Settlement Administration LLC ("Kroll"), conducted a comprehensive Court-approved Notice Program with direct notice of the settlement delivered by text messages directly to Class Members telephones, U.S. First Class mail and email to Class Members, and also published on a dedicated Settlement Website. Declaration of Robert Cormio of Kroll Administration LLC in Connection with Final Approval of Settlement, attached hereto as **Exhibit 1**, ¶¶ 9-17 ("Kroll Decl.").

The settlement is fair, reasonable, and adequate, and represents an outstanding result for the Settlement Class. Through extensive negotiations, the Parties reached an agreement providing

1

for significant monetary relief for the Settlement Class in the form of a $2,500,000 non-reversionary Settlement Fund (the "Settlement Fund"). Declaration of Terence R. Coates in Support of Preliminary Approval of Class Action Settlement, ECF 61-1 ("Coates Decl.") ¶ 16. All Class Members whose Social Security Numbers were potentially accessed or implicated in the Data Incident have had the opportunity to make a claim to receive identity theft monitoring and to receive compensation as reimbursement for out-of-pocket expenses up to $500. Additionally, a subclass of SSN Subclass Members who were California residents on the date that the Data Incident occurred may claim an additional $50 cash award. Further, those Class Members who did not have their Social Security Numbers impacted can make a claim to receive two years of identity theft monitoring. *See* ECF 56-2, Settlement Agreement ("S.A.").

If approved, the settlement will resolve all claims arising from the Data Incident and will provide Settlement Class Members with the particular relief this action was filed to obtain. Under Rule 23(e) of the Federal Rules of Civil Procedure and the Settlement Agreement, Plaintiffs respectfully request that the Court enter a Final Approval Order and Judgment granting final approval of the settlement and certify the Settlement Class.

## II.     INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF 55), filed on May 17, 2024, and the accompanying Exhibits, including the proposed Settlement Agreement, filed in conjunction therewith. Plaintiffs also incorporate by reference the Plaintiffs' Motion for Attorneys' Fees, Expenses, Costs, and Service Awards (ECF 61), filed on December 30, 2024.

### III.   SUMMARY OF SETTLEMENT

#### A.   Settlement Benefits

The settlement negotiated on behalf of the Class provides for a $2,500,000 non-reversionary Settlement Fund and a claims process through which Class Members can easily submit for settlement benefits. The settlement provides for relief for the Class defined as follows: "All persons whose personally identifiable information was identified as included in the Data Security Incident and to whom notice of the Data Security Incident was sent." S.A. ¶ 50. The Class is comprised of approximately 2,000,000 individuals, with roughly 1,300,000 being SSN Subclass Members and roughly 700,000 being non-SSN Subclass Members. Excluded from the Class are PFC and its affiliates, successors, heirs, and assigns. Also excluded from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff. *Id.* ¶ 51. The benefits that can be claimed include reimbursement for out-of-pocket losses; identity-theft protection; and the implementation of security enhancements.

#### 1.   Out-of-Pocket Loss Reimbursement

Each SSN Subclass Member who files a valid claim with supporting documentation will be eligible for compensation for unreimbursed losses, up to a total of $500. S.A. ¶ 55(b)(1). SSN Subclass Members may make a Settlement Claim for the following types of losses:

> [U]nreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after the Data Incident through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges.

*Id.* ¶ 55(b)(1)(i).

3

SSN Subclass Members who were California residents when the Data Incident occurred may submit a claim to receive $50 as compensation for their statutory claim(s) under California law. *Id.* ¶ 55(b)(2).

### 2. Identity-Theft Protection

Every SSN Subclass Member who submits a valid claim is eligible to receive 24 months of free credit and identity monitoring services, called Identity Defense Complete ("Credit Monitoring"). *Id.* ¶ 55(b)(3). Every non-SSN Subclass Member who submits a valid claim is eligible to receive 24 months of free identity monitoring services, called Identity Defense Plus ("Identity Monitoring"). *Id.* ¶ 55(c)(1). Class Members can elect to enroll in these services through submission of a Claim Form and are not required to submit documentation to redeem identity-theft protection benefits.

### 3. Security Enhancements

As part of the settlement and pre-mediation discovery, PFC disclosed that it has made significant investments in continuing to enhance its data security. The settlement contemplates that PFC will pay for the security enhancements separate and apart from the Settlement Fund.

### B. The Notice and Claims Process

The Parties agreed to use Kroll Administration Services LLC as the Settlement Administrator in this case. *Id.* ¶ 42.

### 1. CAFA Notice

Kroll began its work by providing notice of the proposed settlement pursuant to the Class Action Fairness Act 28 U.S.C. §1715(b) ("the CAFA Notice"). Kroll Decl. ¶ 4. At the direction of defense counsel, on May 24, 2024, Kroll sent the CAFA Notice, via First-Class Certified Mail, to (i) the Attorney General of all states and territories, as well as the Attorney General of the United

4

States. *Id.* A copy of the CAFA Notice cover letter is attached hereto as Exhibit B to Kroll's Declaration.

### 2. Notice to Class

Kroll executed the Notice plan by disseminating Notice in the form of text message, email and/or paper notices. S.A. ¶ 70(a). The Settlement Administrator obtained the name and phone number and/or email or mailing address of Class Members from PFC (to the extent such information was readily available to PFC) and performed a skip trace to enable sending notice via U.S. mail when summary post card notice was returned as undeliverable. Kroll Decl. ¶¶ 5-8; S.A. ¶ 68(a)-(c), 69(d). The Settlement Administrator also established a dedicated settlement website throughout the claim period, which included the forms of Short Notice, Long Notice, and Claim Form approved by the Court. Kroll Decl. ¶ 8, S.A. ¶ 44, p. 26 ("Settlement Timeline"). The details of the Notice program are identified more fully in the Settlement Agreement. S.A. ¶¶ 67-70. Kroll also established and maintained a post office box for mailed opt-out requests or objections from the Settlement Class. Kroll Decl. ¶ 7.

The Notice campaign was successful. Following all text messages, mailings, and re-mailings, Kroll has reason to believe that direct notice likely reached 93.1% of Class Members to whom a Short Notice was issued. Kroll Decl. ¶ 17. This reach rate is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches[1] over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign. *Id.*

---

[1] Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf (last visited Apr. 3, 2025). The guide suggests that the minimum threshold for adequate notice is 70%.

### 3. Claims, Objections, and Requests for Exclusion

The claims process was structured to provide all Settlement Class Members adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, and decide whether to opt-out or object. The Notice program advised Settlement Class Members of their rights to object to or opt out of the settlement and directed Settlement Class Members to the Settlement Website for more information. Settlement Class Members were originally provided 90 days from the Notice commencement date to submit their Claim Form to the Settlement Administrator, either online or by mail. S.A. ¶ 58(a). The Claims Deadline has now been extended to April 25, 2025. ECF 63. Settlement Class Members were also provided 90 days from the Notice Commencement Date to opt out or object. *Id*. ¶¶ 71(a), 73(a). To date, there are no objections to the Settlement and no Class Members have requested to exclude themselves from the Settlement. Kroll Decl. ¶ 22.

As of April 3, 2024, Kroll has received 7,828 Claim Forms filed through the mail or filed electronically through the Settlement Website. Kroll Decl. ¶ 19. The Claims Deadline remains open until April 25, 2025. ECF 63.

### C. Attorneys' Fees, Costs, and Service Awards

Plaintiffs previously filed their Motion for Attorneys' Fees, Costs, and Service Awards to ensure that Settlement Class Members had ample opportunity to review the requested amounts prior to deciding whether to object to or opt-out of the Settlement. Plaintiffs requested an award of attorneys' fees of $750,000.00 and out-of-pocket expenses up to $10,390.03. This fee request represents 30% of the total common fund recovery. ECF 61. Plaintiffs also request a Service Award the Class Representatives in the amount of $3,500 each. *Id.*

6

IV.     **ARGUMENT**

    A.     **Final Certification of the Settlement Class is Appropriate**

This Court provisionally certified the Settlement Class for settlement purposes in its Preliminary Approval Order, finding that the Settlement Class meets the numerosity, commonality, and adequacy of representation requirements of Rule 23(a), and the predominance requirement of Rule 23(b). See ECF 59; Fed. R. Civ. P. 23(a)(1)-(4); (b)(3); Manual for Complex Litig. § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "The settlement of a class action may be approved where the Court finds that the settlement is fair, reasonable, and adequate." *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. May 19, 2014). No developments have since arisen that would modify this conclusion. Specifically, the Settlement Class still meets the requirements of numerosity, commonality, typicality, adequacy of representation, predominance, and superiority under Rule 23(a) and (b)(3). As established by the facts and arguments stated herein and for the reasons articulated in Plaintiffs' Preliminary Approval Motion, the Settlement Class should now be finally certified for settlement purposes.

    B.     **Adequate Notice was Provided**

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed Settlement. For classes, like this one, certified under Rule 23(b)(3), parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the

7

proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), the notice must:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Courts, including this one, have acknowledged that "notice by email and text is reasonable in today's mobile society" and that "these methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved." *Bowling v. DaVita, Inc.*, No. 21-CV-03033, 2023 WL 4364140, at *10 (D. Colo. July 6, 2023) (citing *Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1315 (D.N.M. 2017)). For this reason, "[c]ourts in this District . . . have authorized sending notice to putative class members by mail, email, and text message." *Kenney v. Helix TCS, Inc.*, No. 17-cv-01755, 2021 WL 1634506, at *5 (D. Colo. Apr. 27, 2021) (collecting cases).

Besides text message notice, additional notice by mail is also consistent with notice programs approved by other courts. *See Stott v. Capital Financial Servs.*, 277 F.R.D. 316, 342, (N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v. Securities America, Inc.*, Nos. 3:09-cv-01568, 3:10-cv-01833, 2011 WL 3586217, *9 (N.D. Tex. Aug. 4, 2011) (same). The content of the Notice provided adequately informed Settlement Class Members of the nature of the action, the definition of the Class, the claims at issue, the ability of a class member to object or exclude themselves, and/or enter an appearance through an attorney, and the binding effect of final approval and class judgment. The Notice used clear and concise language that is easy to understand and organized the Notice in a way that allowed Settlement Class Members to easily find within the Notice desired information. Thus, it was substantively

8

adequate. *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 764 (10th Cir. 2020), *cert. denied sub nom. Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851 (2020) ("All that the notice must do is 'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests.") (internal citations omitted).

The Notice provided for by the Settlement Agreement meets all the criteria described by Rule 23. *See* S.A., Ex. B (Long Notice), ECF 56-2 at 39-47. The Settlement provided for Notice to be sent via text message, email, and/or First-Class mail to each Settlement Class Member. *Id.* ¶ 33; Kroll Decl. ¶¶ 9-14. Additionally, all versions of the settlement Notice have been made available to Settlement Class Members on the Settlement Website, along with all relevant filings. Kroll Decl. ¶ 8. The Settlement Administrator also set up a post office box and toll-free telephone number available by which Settlement Class Members could seek answers to questions about the Settlement. *Id.* ¶¶ 6-7. The Notice process engaged in by the Settlement Administrator complies with the requirements of the Class Action Fairness Act, 28 U.S.C. Sec. 1711, *et seq.* ("CAFA"). *Id.* ¶ 4.

As noted above, the Notice program was successful, reaching 93.1% of the Settlement Class Members. *Id.* ¶ 17. Such notice complies with the program approved by this Court in its Preliminary Approval Order, is consistent with notice programs approved in Colorado, the Tenth Circuit and across the United States. 93.1% is considered a "high percentage," and is within the "norm." *See* Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide or Judges*, 27 (3d Ed. 2010). Kroll and Class Counsel executed a successful Notice program that meets all the requirements of Rule 23, and satisfies due process requirements.

9

### C. Plaintiffs' Counsel Should Be Appointed as Settlement Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed herein, and as articulated in the documents supporting preliminary approval, proposed Settlement Class Counsel have extensive experience prosecuting similar class actions and other complex litigation. Coates Decl. ¶¶ 1, 4, 16. The proposed Settlement Class Counsel have diligently investigated and efficiently prosecuted the claims in this matter, dedicated substantial resources toward the endeavor, and have successfully and fairly negotiated a non-reversionary common fund settlement. Accordingly, Plaintiffs request that the Court finally appoint Terence R. Coates of Markovits, Stock & DeMarco, LLC, Jean S. Martin of Morgan & Morgan, and Joseph M. Lyon of The Lyon Firm as Settlement Class Counsel.

### D. The Settlement Should be Finally Recognized as Fair, Reasonable, and Adequate

For a settlement to receive final approval under Rule 23(e)(2), the court must consider whether the settlement is "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arms' length; (C) the relief provided for the class is adequate . . .; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). In making such a determination, courts consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of

10

processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv).

In the Tenth Circuit, the authority to approve a class settlement lies within the sound discretion of the trial court. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). Specifically, the factors that must be addressed under *Jones* to evaluate whether a class action settlement is fair and reasonable under Fed. R. Civ. P. Rule 23 include: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and, (4) the judgment of the parties and their counsel that the settlement is fair and reasonable. *Id.*

Here, because the Settlement is fair, reasonable, and adequate under both Rule 23(e) and the *Jones* factors, this court should grant preliminary approval.

### 1. The Settlement was Fairly and Honesty Negotiated

The negotiations in this matter occurred at arm's-length. Coates Decl. ECF 56-1 ¶¶ 35, 39. Settlements negotiated by experienced counsel that result from arm's-length negotiations are presumed to be fair, adequate, and reasonable. *Voulgaris v. Array BioPharma Inc.*, No. 17-cv-02789, 2021 WL 6331178, at *9 (D. Colo. Dec. 3, 2021) (noting that "this Court has held that counsels' judgment as to the fairness of the agreement is entitled to considerable weight.") (Internal citations and quotations omitted); *Florence v. Jose Pepper's Rest., LLC*, No. 20-2339, 2021 WL 5042715, at *5 (D. Kan. Oct. 29, 2021) (approving class action settlement, finding that "the parties are represented by qualified and experienced counsel who believe the settlement is fair, reasonable and adequate.").

11

Here, the Parties engaged in prolonged settlement discussions due to financial constraints of the Defendant. PFC provided discovery materials regarding its financial position and its wasting insurance policy. Due to the financial circumstances of PFC, the Parties elected to settle the case themselves rather than dedicate any of the limited financial resources to the cost of a private mediator. This factor favors final approval.

### 2. Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt

Plaintiffs believe their claims are viable and that they have a reasonably good chance of proving that Defendant's data security was inadequate and that, if they establish that central fact, Defendant is likely to be found liable under at least some of the liability theories and legal claims Plaintiffs pled in their Amended Complaint. ECF 28. While Plaintiffs believe they have strong claims and would be able to prevail, their success is not guaranteed. In contrast, the value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain – especially where serious questions of law and fact exist, which is common in data security incident litigation. The field of data breach litigation is evolving; there is no guarantee of the ultimate result. Here, the value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain. Data breach litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases … are particularly risky, expensive, and complex.").

Should litigation continue, it is likely Plaintiffs would have to immediately survive a motion to dismiss in order to proceed with litigation. Attributable in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this generally face substantial hurdles, even to survive the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ.

12

6060, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).

Despite the extent to which the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, data breach class actions are among the riskiest and most uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. Moreover, because of the quickly evolving nature of case law pertaining to data protection, it is likely that a win by any party will result in appeals, which will further increase costs and extend the time until Plaintiffs and Settlement Class Members can have a chance at relief.

### 3. The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation

The Settlement provides for substantial relief in light of the costs, risks, and delay of trial, the effectiveness of distributing relief, and the proposed attorneys' fees. The Settlement negotiated on behalf of the Class provides for a $2,500,000 Settlement Fund where Settlement Class Members can easily submit a claim for substantial relief from the Settlement Fund. The per-class member recovery of approximately $1.25 per class member is consistent with terms approved in similar data security cases with large class sizes totaling seven figures. *See, e.g.*, *Cochran v. The Kroger Co.*, No. 20-cv-3424, 2022 WL 2126696 (N.D. Cal. Mar. 24, 2022) (granting final approval of a data breach class action settlement involving roughly 3.82 million class members and a $5 million

13

settlement fund or $1.31 per class member). Here, Defendant's financial condition was weak and Plaintiffs were still able to negotiate a settlement consisting of a $2.5 million non-reversionary common fund. Coates Decl. ECF 56-1, ¶¶ 13, 14, 16.

### 4. The Judgment of the Parties and their Counsel that the Settlement is Fair and Reasonable

The judgment of the parties and their counsel also supports a finding that the settlement is fair and reasonable. Here, the Parties entered into the settlement only after both sides were fully apprised on the facts, risks, and obstacles involved with protracted litigation. *Id*., ¶¶ 33-40. From the beginning of their investigation, Settlement Class Counsel conducted extensive research regarding Plaintiffs' claims, Defendant, and the Data Incident. *Id*. In negotiating the amounts to be paid and additional benefits under the settlement, Plaintiffs' Counsel relied upon published reports documenting data privacy and identity theft costs generally, alleged actual costs incurred by Settlement Class Members (as relayed in conversations with Defendant's Counsel), their own experience in other data privacy litigation, and reported settlements in other data privacy class actions. The monetary benefits and identify theft protection services offered to Settlement Class Members are fair and reasonable in light of reported average out-of-pocket expenses due to a data incident. Additionally, the Class Representatives provided adequate representation, as their interests are coextensive with—and not antagonistic to—the interests of the Settlement Class. Plaintiffs' claims are aligned with those of the other Settlement Class Members.

The benefits available here compare favorably to what Settlement Class Members could recover if successful at trial and provide meaningful relief to the Class in light of the uncertainties presented by continued litigation and trial. In the experience of Plaintiffs' counsel who have litigated numerous data breach cases, have spoken to victims of other data incidents, and have reviewed claims data from other settlements, the relief provided by this settlement is an

14

outstanding result and benefit to the Class. *Id*., ¶¶ 33-40. Additionally, the monetary benefits provided by the Settlement compare favorably with those of other settlements in data privacy class actions that have been approved by other courts, including those cited above. *Id.*

### 5. There are No Additional Agreements Required to be Identified Under Rule 23(e)(3)

There are no additional agreements required to be identified under Rule 23(e)(3). Because no such additional agreements exist, this factor does not weigh in favor of or against final approval.

### 6. The Reaction of the Settlement Class Members is Positive, and There is No Opposition to This Settlement

While not a Rule 23(e) or stand-alone *Jones* factor, the reactions of the Settlement Class Members and the amount of opposition are important factors for the Court's consideration of final approval. Here, the reaction of the Class is positive, with no opt-outs, no objections by Settlement Class Members, and almost roughly 8,000 current claims. Kroll Decl. ¶¶ 19, 22. Also, there is no opposition to the overall settlement, the attorneys' fees and expenses requested, or the Service Awards. Faced with no opposition, this Settlement should be finally approved and the Court should enter a Final Approval Order and Judgment. A Proposed Order is attached for the Court's consideration.

## V. CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable Settlement. For the foregoing reasons, Plaintiffs respectfully request that this Court grant final approval of the settlement and certify the Settlement Class.

Dated: April 3, 2025                    Respectfully submitted,

                                        */s/ Terence R. Coates*
                                        Terence R. Coates
                                        Dylan J. Gould
                                        **MARKOVITS, STOCK & DEMARCO, LLC**

15

        119 East Court Street, Suite 530
        Cincinnati, Ohio 45202
        Telephone: (513) 651-3700
        Facsimile: (513) 665-0219
        *tcoates@msdlegal.com*
        *dgould@msdlegal.com*

        Joseph M. Lyon
        **THE LYON FIRM, ALC**
        2754 Erie Avenue
        Cincinnati, OH 45208
        Phone: (513) 381-2333
        Fax: (513) 766-9011
        *jlyon@thelyonfirm.com*

        Jean S. Martin
        Francesca Kester Burne
        **MORGAN & MORGAN COMPLEX**
        **LITIGATION GROUP**
        201 N. Franklin Street, 7th Floor
        Tampa, Florida 33602
        (813) 223-5505
        jeanmartin@ForThePeople.com
        fburne@ForThePeople.com

        *Class Counsel for Plaintiffs and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of April, 2025, I served the foregoing document upon all parties through their counsel of record by causing it to be filed with the Clerk of this Court via the Court's electronic-filing system in accordance with Fed. R. Civ. P. 5(b)(2)(E).

*/s/ Terence R. Coates*
Terence R. Coates

17